OPINION OF THE COURT
Dargel Clark, J.
The People have filed a motion to reargue this court’s decision granting a pretrial “Mapp/VTL 1194” hearing. The decision was rendered in court on September 19, 2002 with a copy being personally served on both the prosecutor and defendant *815 on that date. The People’s current motion to reargue was filed with the court on December 9, 2002, almost three months later. Defendant argues that this reargument motion is untimely.
The People’s motion to reargue is timely. In People v Hernandez (255 AD2d 112 [1st Dept 1998], lv denied 93 NY2d 874 [1999]), the Appellate Division, First Department, made clear that “[a] reargument motion is untimely when made after the time to file a notice of appeal has expired.” (255 AD2d at 112.) The People’s time to file a notice of appeal from an order that does not embody a judgment or sentence does not expire until “thirty days after service upon [the nonprevailing] party of a copy of [the] order.” (See CPL 460.10 [1] [a].) Defendant implicitly concedes that he never served a copy of this court’s order dated September 19, 2002. However, he urges that “service” of the order “was completed by the Court” itself on the day that the order was issued and distributed in the courtroom. That position cannot withstand analysis under the Court of Appeals decision in People v Washington (86 NY2d 853 [1995]). In Washington, the Court expressly construed section 460.10 (1) (a) “to require prevailing party service in order to commence the time for filing a notice of appeal.” (86 NY2d at 854.) Inasmuch as defendant was the prevailing party in the September 19th order, it was his obligation to serve the People with a copy of the order. Here, as in Washington, there is no evidence that he did so. Accordingly, the court is constrained to hold that the time in which to appeal has not yet run, and, as a consequence, the time in which to move for reargument has not expired either.* (See People v Ancrum, 2002 NY Slip Op 50227[U] [Nassau Dist Ct 2002].) The motion to reargue is granted.
Upon reargument, the court adheres to its original decision that the determination of the admissibility of a refusal to submit to a chemical test is best addressed at a hearing held prior to commencement of trial. While the People may be correct in their assertion that there is no statutory authority for such a separate refusal hearing, there is ample precedent within the boroughs of New York City and throughout New York State where this issue has been addressed in a pretrial hearing. (See, e.g. People v Andrews, 2002 NY Slip Op 50394[U] *816 [Nassau Dist Ct 2002]; People v Dejae, 187 Misc 2d 287 [Sup Ct, Monroe County 2001]; People v Stone, 2001 NY Slip Op 40361[U] [Suffolk County Ct 2001]; People v Almeraris, NYLJ, July 1, 1999, at 34, col 3 [Crim Ct, Richmond County]; People v Ostad, NYLJ, June 22, 1998, at 34, col 3 [Nassau Dist Ct]; People v Jakab, NYLJ, June 1, 1998, at 37, col 4 [New Rochelle City Ct]; People v Burke, NYLJ, Dec. 1, 1997, at 32, col 4 [App Term, 2d Dept]; People v Coludro, 166 Misc 2d 662 [Crim Ct, Kings County 1995]; People v Pagan, 165 Misc 2d 255 [Crim Ct, Queens County 1995]; People v Briggs, NYLJ, Jan. 31, 1994, at 29, col 6 [Crim Ct, Bronx County]; People v Camagos, 160 Misc 2d 880 [Crim Ct, Queens County 1993]; People v Baginski, NYLJ, Mar. 13, 1992, at 25, col 6 [Crim Ct, Kings County]; People v Harris, NYLJ, Aug. 25, 1992, at 23, col 2 [Crim Ct, NY County]; People v Delia, 105 Misc 2d 483 [Onondaga County Ct 1980].)
The People’s citing of the case of People v Hines (Sept. 20, 2000, Sonberg, J., Indictment No. 2000BX004938) for the proposition that a pretrial suppression hearing is not the appropriate forum for resolution of the admissibility of a refusal is belied by a reading of this case in which such a suppression hearing was held and included the issue of the refusal. The court there determined that the judicial hearing officer had mistakenly suppressed the refusal evidence based upon a supposition that some medical treatment may have impacted the defendant’s ability to “understand the warnings” (slip op at 2). The court also goes on to say: “There was no proof that the defendant was other than alert when she refused or that she did not understand Officer Wellinghoff’s recital of the warnings. While the eventual trier may evaluate the refusal in light of the earlier agreement to submit, the passage of time and such proof as to the nature of the medical treatment received by the defendant during her absence from the emergency room as may be adduced at trial, all of those matters go to the weight to be given the refusal, rather than to its admissibility.” (Id. at 2-3.) Another case cited by the People to support their opposition to a pretrial suppression hearing on breathalyzer results based upon a claim of radio frequency interference is also taken out of context. In People v Merrick (188 AD2d 764 [3d Dept 1992]), the appellate court held that the County Court’s denial of suppression without a hearing was based upon the decision in People v Alvarez (70 NY2d 375, 380 [1987]) in which the Court of Appeals explicitly held that the particular issue of the interference of radio waves on breathalyzer machines can be *817 explored at trial. Such is not the case on refusal evidence. This court is not aware of, nor have the People cited, any precedent which explicitly states that the issue of admissibility of refusal evidence is to be determined at trial and not in a pretrial hearing. Accordingly, until specifically addressed by a higher court, this court will follow the practice of the other trial courts of this state and hold a pretrial hearing to determine the admissibility of this evidence.
The People’s second claim on reargument is that it was error for the court to grant a hearing on the issue of probable cause for defendant’s arrest because the defendant failed to provide a sufficient factual issue under People v Mendoza (82 NY2d 415 [1993]). Even if defendant’s motion papers did not conform to the technical requirements of Mendoza, the court is entitled to exercise its discretion and grant a hearing “despite a perceived pleading deficiency.” (Id. at 429.) Here, the defendant’s papers could have framed the factual issues more precisely, but the court will exercise its discretion to permit a hearing. Accordingly, the court adheres to its prior granting of a Dunaway hearing.
The remainder of the People’s motion relates to a claim that the court imposed an additional burden of proof on the People that is not included in the statute, namely, that they must show that the defendant understood the warnings sufficiently to give a response and that the response given constituted a refusal. The court has not intended to impose any additional burden of proof on the People but merely expressed the interpretation of the prevailing case law as to what is necessary to sustain the burden of showing that a person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal. These cases reveal that courts take a strict view of what must be shown in order for this refusal evidence to be used at trial.
In People v Yassi (NYLJ, Sept. 26, 1997, at 35, col 2 [Crim Ct, Queens County]), the court determined that Vehicle and Traffic Law § 1194 (2) (f) requires the dual showing that a defendant was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the defendant persisted in refusing (citing People v Briggs, NYLJ, Jan. 31, 1994, at 29, col 6 [Crim Ct, Bronx County]). The court enunciated the four parts of the warnings to include: (1) You are under arrest for driving while intoxicated; (2) A refusal to submit to a chemical test, or any portion thereof, will result in the immediate suspension and subsequent revocation of your *818 license and operating privilege whether or not you are convicted of the charge for which you were arrested; (3) If you refuse to submit to a chemical test, or any portion thereof, your refusal can be introduced into evidence against you at any trial, proceeding, or hearing resulting from this arrest; (4) Will you submit to a chemical test of your breath, blood, saliva or urine for the presence of alcohol? The court held in Yassi that the testimony at the refusal hearing did not establish that the defendant was ever advised that his refusal to submit to a chemical test could be introduced into evidence against him at trial or that defendant was ever given the complete set of warnings outlined above.
The determination of the standard for clear arid unequivocal language is viewed in the eyes of the person who is being told the warnings, not the person administering them. This is especially crucial in the cases where a language barrier makes it difficult to establish that the defendant was given sufficient warning. For example, in People v Niedzwiecki (127 Misc 2d 919 [Crim Ct, Queens County 1985]), the court found that the defendant’s native language of Polish prevented his fully understanding the refusal warnings which were given to him in English. Therefore, the question of whether the warnings were clear and unequivocal was decided on the defendant’s understanding them, not on the objective standard of whether the police officer read the warnings verbatim from the statute. Based on his inability to understand the warnings, the court held the refusal evidence inadmissible.
A similar result occurred in People v Marquez (NYLJ, Sept. 8, 1992, at 25, col 2 [Crim Ct, Bronx County]). There, a Spanish-speaking defendant was shown a videotape in which the refusal warnings were given in Spanish. At the completion of the tape, the defendant stated “No,” which was interpreted as a refusal by the police officer who was present during the playing of the tape. However, this police officer did not speak Spanish so he was unable to ask the defendant if he was indeed refusing to take the test or if he was saying he did not understand the warnings. The court stated that the People had the burden of establishing, by a preponderance of the evidence, that the defendant was capable of understanding the refusal warning (citing People v Baginski, NYLJ, Mar. 13, 1992, at 25, col 6 [Crim Ct, Kings County]). The court found that the warnings were not given in clear and unequivocal language based upon the People’s failure to lay a proper foundation to introduce the tape used to recite the warnings in Spanish to this *819 defendant. The court went on to say that the presence of a language barrier put the defendant at an unacceptably unfair disadvantage when it came to understanding any warnings given by a police officer who does not speak the same language. This precluded the defendant from making an informed choice about taking the test.
The language used in this court’s original decision that the hearing must involve a determination whether “defendant understood the warnings sufficiently to give a response” was not intended as an additional element of proof. Rather, this was simply another way of saying that the proof must show that the warnings were clear. Of course, proof that the defendant actually understood the warnings would leave little doubt that the warnings were clear and unequivocal. (See People v Vasquez, NYLJ, May 17, 2001, at 23, col 3 [Crim Ct, Queens County] [court found that defendant was given comprehensive, clear and unequivocal warnings and responded that he understood them].)
As the court stated on page 4 of its opinion of September 18, 2002, the People are required by statute to prove, by a preponderance of the evidence, that defendant was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the defendant persisted in the refusal. How the People choose to prove this is entirely up to them. The court was not instructing them on how to proceed at the hearing but merely recited the issues that usually need to be resolved at such hearing (slip op at 5). By reciting the second issue, that is, showing that defendant understood the warnings sufficiently to give a response, the court was alluding to the cases just cited where a showing of defendant’s understanding of the warnings was a factor in the determination of whether the warnings were sufficient and whether there was a refusal. Additionally, the cases cited regarding the question of what constitutes a refusal were intended to show that a person’s conduct, and not merely a verbal response, has been interpreted by courts as constituting a refusal. (See also, People v Bratcher, 165 AD2d 906 [3d Dept 1990] [failure to blow into the machine hard enough after being warned constituted a refusal]; People v Massong, 105 AD2d 1154 [4th Dept 1984] [pretending to be unconscious is the equivalent of a refusal].)
In conclusion, the court adheres to its original decision regarding the necessity of a pretrial hearing to determine the admissibility of defendant’s refusal to submit to the chemical *820 test. The People bear the burden of proving, by a preponderance of the evidence, that the warnings were given in clear and unequivocal language and defendant persisted in his refusal. In addition, defendant’s request for a Dunaway portion of the hearing is granted. This decision does not aifect the other issues decided in the original opinion, which remain in full force and effect.

 This is not to say, of course, that a party can move to reargue at will until the entry of a final judgment merely because the other side has neglected to serve a copy of a decision. A motion to reargue can be made only when the court allegedly has overlooked or misapprehended a fact or legal principle. (See generally CPLR 2221 [d] [2].)